UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| KENNY OUTZS | CIVIL ACTION NO. 06-0208 |
| versus | JUDGE HICKS |
| N. BURL CAIN, WARDEN, ET AL. | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

A Caddo Parish jury convicted Kenny Outzs ("Petitioner") of two counts of armed robbery. Petitioner was later adjudicated a third felony offender and sentenced to life imprisonment. He pursued a direct appeal and state post-conviction relief. He now seeks federal habeas relief on the grounds that the evidence was insufficient to support the "dangerous weapon" element of the two convictions. It is recommended, for the reasons that follow, that relief be denied.

**Standard of Review**

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The trier of fact has broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.

The Louisiana courts, as will be discussed below, applied the proper Jackson standard to Petitioner's case. Thus, the state court adjudication was not "contrary to clearly established Federal law," so Petitioner can obtain habeas relief only if the state court's decision was an "unreasonable application" of Jackson. 28 U.S.C. § 2254(d); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000).

Under the unreasonable application clause, a federal court is permitted to grant the writ if the state court has identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the prisoner's case. Williams, 120 S.Ct. at 1523. Even if the federal court, in its independent judgment, has a firm conviction that the state court was incorrect in its application of a federal constitutional principle, that alone does not permit the federal court to grant habeas relief. Relief is not permitted unless the State court decision was so wrong as to be objectively unreasonable. Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). And it is only the State court's ultimate decision, not the quality of its analysis or opinion, that is at issue. Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002)(en banc).

**Elements of the Crime**

Louisiana law defines armed robbery as the "taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La.R.S. 14:64. The "dangerous weapon" element "includes any . . . instrumentality, which, in the manner used,

is calculated or likely to produce death or great bodily harm." La.R.S. 14:2(A)(3). Louisiana courts frequently explain that "dangerous weapon" is not limited to instrumentalities which are inherently dangerous but, because of the definition, also include instrumentalities which in the manner used are calculated or likely to produce death or great bodily harm. See, e.g., State v. Bonier, 367 So.2d 824, 826 (La. 1979); State v. Malhiot, 2006 WL 2422880 (La. App. 2d Cir. 2006). That obviously does not preclude inherently dangerous objects such as guns, knives or clubs from being a dangerous weapon if they are not, during the robbery, actually used in a manner calculated or likely to produce harm.

**Analysis**

The convictions in this case arise from the robberies of two Shreveport Circle K convenience stores that were committed within less than one hour. Petitioner committed the first robbery at about 2:25 a.m. He entered the Circle K store on Pierremont Road. The clerk, Stephen McGhee, testified that he was working in the cooler when he heard a loud thump and walked out to see "a gentlemen there in a blue shirt with a tire iron." McGhee added: "He had hit the counter and he had demanded all the money. He had his shirt over his head, telling me to give him the money and that was it." Tr. 204. McGhee testified that Petitioner also "told me not to try anything or else I would get hurt if I tried anything. I guess he was going to hurt me with the tire iron . . . ." McGhee chose not to confront the robber and, instead, went to the office and called the police. He speculated that if he had confronted Petitioner he "would have probably got hit a couple of times." Tr. 205.

Petitioner's description of this robbery in his petition to this court is that the robber was using a crowbar to open the register when the clerk saw him. Petitioner says the robber merely "stated to the clerk that he was taking the money and that he should stay away." Petitioner adds that the robber never assaulted the victim, made reference to or brandished the crowbar. This description of the events is at odds with Mr. McGhee's testimony that Petitioner threatened him with harm while holding the tire iron.

The second robbery was committed at a Circle K on Youree Drive across the street from LSU-S. Store clerk Christopher Watson testified that he saw the robber come in with a jersey or similar clothing item over his face. Watson said the robber "went over to the counter and he had a crowbar, he was trying to pass it off as a gun, but it was a crowbar." Watson explained that the robber wore a long sleeve shirt and had the crowbar tucked under his sleeve, which he held out toward Watson. Tr. 219-21. Watson testified that the robber never hit him with the crowbar or banged it on the counter, but "the threat of violence was there and I took it seriously." Tr. 229-30.

Lavonne Smith was on her way home from work when she stopped by the Youree Drive Circle K store. As she parked her car, she looked up and "saw a gentleman walking out of the Circle K store with a crowbar in his hand and he had a shirt over his head." Tr. 232.

The sufficiency of the evidence arguments were first raised in a post-conviction application. The district judge, in a reasoned opinion, recited the Jackson standard, the

elements of the crime, and discussed the testimony summarized above. He quickly concluded that the evidence was sufficient to support the dangerous weapon element of the first robbery. He reached the same conclusion with respect to the second robbery, noting Louisiana jurisprudence that no weapon "need ever be seen by the victim" or recovered for the trier of fact to be justified in finding that the defendant was in fact armed with a dangerous weapon. Ms. Smith had confirmed the store clerk's suspicion that it was a crowbar that Petitioner had concealed in his shirt sleeve. Tr. 536-38. The appellate court denied relief because the transcript "show[ed] that the applicant was armed with a crowbar when he demanded and obtained money from the store clerks." Tr. 603. The Supreme Court of Louisiana denied writs without comment. Tr. 604.

Crowbars are not an uncommon weapon used in the commission of violent crimes. See, e.g., State v. Richardson, 896 So.2d 257 (La. App. 2d Cir. 2005) and State v. Jeselink, 799 So.2d 684 (La. App. 2d Cir. 2001). The perpetrators in those cases used a crowbar to actually injure a victim, but that is not necessary to render a crowbar a dangerous weapon in the armed robbery setting. Robbers armed with guns, knives and other dangerous weapons frequently do not waive the weapons around or threaten to use them on the victim. They often merely exhibit the weapon in a waistband or pocket. There is no doubt in such cases that a dangerous weapon has been employed. The same is true in this case because a weapon that in almost anyone's hands is capable of inflicting death or significant physical injury was in the hands of a man who entered a store and demanded money. The clerks were both aware

of the weapon and said that they were afraid under the circumstances. Reasonable persons might find room to argue whether the dangerous weapon element was satisfied with respect to the second robbery, but there are very good arguments that it was satisfied. Under those circumstances, this federal court cannot say that the state court's adjudication of the issue was objectively unreasonable.

Accordingly;

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied** and that Petitioner's complaint be **dismissed with prejudice.**

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this the 30th day of November, 2006.

                                                              /s/ Mark L. Hornsby
                                                             MARK L. HORNSBY
                                                            UNITED STATES MAGISTRATE JUDGE